# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CEDRIC JARREAU HAWKINS, <br><br> Defendant. | No. 07-CR-35-LRR <br><br> **ORDER** |

_____

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

III. TRIAL EVIDENCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    A.   *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . . . . . *5*
    B.   *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

V.   LEGAL ANALYSIS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    A.   *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    B.   *404(b) Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

VI.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## *I. INTRODUCTION*

The matter before the court is Defendant's Motion for New Trial and Motion for Judgment of Acquittal (docket no. 75) and the government's resistance thereto (docket no. 79).

## *II. PROCEDURAL HISTORY*

On May 8, 2007, a federal grand jury returned a four-count Indictment against Defendant and Themous Cornelius Hawkins. Defendant was charged only in Count 3.

Count 3 charged Defendant with distribution of cocaine base ("crack") within 1,000 feet of a protected location, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 860.

Defendant was arraigned on July 3, 2007 (docket no. 31) and trial was set for August 27, 2007. (docket no. 34). Defendant elected to go to trial. The court granted in part, denied in part and reserved in part Defendant's motion in limine (docket no. 45), relating to prior convictions for drug crimes (docket no. 59). On August 29, 2007, a unanimous petit jury found Defendant guilty of distribution of cocaine base. The jury also answered two interrogatories finding unanimously and beyond a reasonable doubt that the distribution of crack occurred within 1,000 feet of a protected location and that the quantity of cocaine base involved in the distribution was five grams or more of a mixture or substance containing a detectable amount of cocaine base. (docket no. 67).

At the request of Defendant, the deadline for filing post-trial motions was extended. The instant motion was filed on September 9, 2007. (docket no. 75).

### III. TRIAL EVIDENCE

The charge in the Indictment against Defendant arose from one controlled buy conducted by a confidential informant ("CI") under the supervision of DEA Task Force Officers ("TFOs") on August 10, 2006.

At the time of the controlled buy, the CI, a forty-plus-year-old female, was a waitress at a "gentlemen's club." She had state criminal charges pending for distribution of methamphetamine. She agreed to cooperate with law enforcement hoping to "work off" her charges. The CI advised TFOs that she could buy crack cocaine from "CJ" and "T" who lived in the apartment above her sister in Marion, Iowa. The CI was living with her sister at about this time. According to the CI, she had met Defendant one time before when "T" borrowed baking soda from her sister and she (CI) took it upstairs to "T's" apartment. When she took the baking soda upstairs, T showed her crack and offered crack to her. According to the CI, "CJ" and "T" made it clear she could buy crack from them

at any time. "T"[1] and "CJ"[2] are cousins.

On August 9, 2006, the CI called "T" to inquire about purchasing crack cocaine from him on August 10, 2006. "T" was going to be out of town and directed the CI to "CJ." When the CI made her telephone call on August 10, 2006 to "T's" cell phone, TFO Joshua Lupkes ("TFO Lupkes") and TFO Claude Howard ("TFO Howard") monitored the call.

"CJ" (Defendant) answered "T's" cell phone. The CI and the Defendant agreed to meet in front of "T's" apartment building at 910 33rd Avenue in Marion.

Prior to the controlled transaction on August 10, 2006, TFOs set up advance surveillance on and around the apartment building at 910 33rd Avenue in Marion, while other TFOs prepared the CI to make the buy by providing her with $350 in pre-serialized currency and installing an audio transmitter in her purse. Prior to the CI's leaving to drive her car to the controlled buy, TFOs searched her car and a female officer strip searched the CI.

The CI drove alone in her car to 910 33rd Avenue in Marion, Iowa, while maintaining voice contact with a TFO via the transmitter in her purse. He could hear her, but she could not hear him. As she neared the apartment building, the TFOs on surveillance monitored her actions as well as listened to sounds picked up by the transmitter in her purse. The plan was that the CI would pick up Defendant in her car, drive around the block in a predetermined route surveilled by TFOs and then return Defendant to the apartment building

Defendant arrived at the apartment building in a blue mini van driven by Jamie Lynn Neise, "T"'s girlfriend. Defendant went into the apartment building briefly and then

---

[1] "T" was identified asThemous Hawkins.

[2] "CJ" was identified as Cedric Jarreau Hawkins.

came out and got in the CI's car. Law enforcement watched her drive around the specified route with Defendant in her car and then let Defendant out of her car at the apartment building. During the drive, no mention was made of crack or cash. Defendant did state during the deal that he liked her. There was also some conversation about cars. During the trip around the block, the CI got a call from "T" on her cell phone. "T" was upset that she was late arriving at the apartment. "T" then asked to talk to Defendant. Defendant took the CI's phone and talked to "T."

Defendant admitted at trial that it was he who got out of the mini van and into the CI's car. He claimed this was the first time he had ever met the CI and that he got in the car to meet the CI so he could ask her for a date. According to the Defendant, his cousin, "T," set them up and told him that the CI could only meet with him for a few minutes, because she had other things to do. Defendant testified he did meet her later at the Catherine McCauley Center where she lived. According to Defendant, the CI sneaked him into her room where they had sex and used crack which the CI retrieved from her vagina. Defendant testified he and "T" also socialized with her at her place of work and at the CI's boss's home where drugs were provided.

After the CI dropped Defendant back at the apartment building, she drove to meet TFOs at an agreed location. There she gave TFOs a substance she said she bought from Defendant. The substance was identified by a DEA chemist as cocaine base with a gross weight of 31.89 grams, net weight (pure) 5.4 grams and a purity rate of 61%.

An employee of the City of Cedar Rapids' Geographic Information Systems testified the apartment building at 910 33rd Avenue, Marion, Iowa, as well as the route driven during the controlled buy were within 1,000 feet of a high school.

At the time of her trial testimony, the CI acknowledged a lengthy criminal history. She stated she did receive a favorable disposition on her state methamphetamine charge as a result of cooperating with authorities on the instant controlled buy from Defendant and

4

two controlled buys from "T." "T" was prosecuted and pled guilty to crack distribution charges.

### IV. LEGAL STANDARDS

#### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). "A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Mundt*, 846 F.2d 1157, 1158 (8th Cir. 1988); *see also United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) ("A motion for judgment of acquittal should be granted only 'if there is a no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999)); *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999) (holding that evidence should be viewed in light most favorable to the government). The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *Id*. Those tasks are for the jury. *Id*.

#### B. Motion for New Trial

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice

5

so requires." Fed. R. Crim. P. 33.  However, "[m]otions for new trials are generally disfavored, *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002), and will be granted only where 'a serious miscarriage of justice may have occurred.'" *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (quoting *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001)).  Indeed, "[t]he granting of a new trial under Rule 33 is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (citing *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d. 1313, 1319 (8th Cir. 1980))).

The evidentiary standard of review differs from the standard that is applied in a motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal.  The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial.  The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.  If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007) (quoting *United States v. Anwar*, 428 F.3d 1102, 1109 (8th Cir. 2005) (citing *Lincoln*)).  Under Rule 33, district courts are granted broad discretion.  *United States v. LeGrand*, 468 F.3d 1077, 1080 (8th Cir. 2006).

### V.  *LEGAL ANALYSIS*

Defendant presents two arguments in support of his motion.  First, Defendant claims that the evidence presented was not sufficient to convict Defendant of distribution

6

of cocaine. Second, Defendant argues that the court improperly admitted evidence of two prior convictions for drug distribution pursuant to Federal Rules of Evidence 404(b) and 403 by denying in part his motion in limine (docket no. 59).

### A. Sufficiency of the Evidence

In order to be convicted of distribution of cocaine base, the United States had to prove the following elements:

> One, on or about August 10, 2006, Defendant intentionally transferred a mixture or substance containing a detectable amount of cocaine base to another person; and
>
> Two, at the time of the transfer, Defendant knew it was a controlled substance, namely, cocaine base.

*See* 21 U.S.C. §841(a)(1); *United States v. Olguin*, 428 F.3d 727, 728-29 (8th Cir. 2005).

Apparently, the jury believed the testimony of the CI and law enforcement and concluded that when Defendant entered the CI's car and drove around the block with her, a drug transaction took place during which Defendant supplied 5.4 grams of cocaine base for which the CI paid $350 in preserialized currency. The jury apparently did not believe Defendant's story that he was in the CI's car just to meet her and arrange a date with her. As to the motion for a judgment of acquittal, viewing the evidence in the light most favorable to the government, the court finds that there is substantial evidence from which a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt. *See Hayes*, 391 F.3d at 961.

The motion for new trial must also be denied because the evidence does not weigh heavily enough against the verdict such that the court concludes that a miscarriage of justice may have occurred. *See Lincoln*, 630 F.2d at 1319.

### B. 404(b) Evidence

In his motion, Defendant argues that the Court erred in its ruling on the Defendant's motion in limine on the 404(b) evidence. No new arguments or legal authority are presented.

7

Federal Rule of Evidence 404(b) provides, in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Rule 404(b) is a "'rule of inclusion rather than exclusion, allowing the admission of other crimes evidence relevant to any issue in the trial other than any criminal disposition of the accused.'" *United States v. Lakoskey*, 462 F.3d 965, 979 (8th Cir. 2006) (quoting *United States v. Koski*, 424 F.3d 812, 817 (8th Cir. 2005)). Under Rule 404(b), prior bad acts evidence is admissible if it is "'(1) relevant to the material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged.'" *Lakoskey*, 462 F.3d at 980 (quoting *United States v. Warfield*, 97 F.3d 1014, 1026 (8th Cir. 1996)); *see also* Fed. R. Evid. 401 (stating evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); Fed. R. Evid. 402 ("Evidence which is not relevant is inadmissible.").

To prove the alleged crime, the government must prove that Defendant (1) intentionally transferred cocaine base to another person and (2) at the time of the transfer, Defendant knew that it was a controlled substance. *See United States v. Olguin*, 428 F.3d at 728-29 (8th Cir. 2005).

Pursuant to Federal Rule of Evidence 404(b), Defendant sought to exclude from trial evidence of his four prior convictions, namely:

> (1) a July 12, 2000 conviction for manufacture and delivery of a controlled substance in Cook County, Illinois;
>
> (2) a July 12, 2000 conviction for manufacture and delivery

8

of a controlled substance in Cook County, Illinois;[3]

  (3) a July 12, 2000 conviction for possession of a controlled substance in Cook County, Illinois;[4]; and

  (4) a May 20, 2003 conviction for aggravated unlawful use of a weapon in County, Illinois.[5]

In the Resistance, the government conceded that it did not intend to offer evidence of the Weapon Conviction, unless Defendant testified.

  The government met prong one of the Rule 404(b) test for each of the Drug Convictions. *Lakoskey*, 462 F.3d at 980. The court found that each of the Drug Convictions was relevant to a "material issue," in the case, namely, they were relevant to his intent to distribute drugs on August 10, 2006. The government also met prong two of the Rule 404(b) test, because it was able to establish the existence of the Drug Convictions by a preponderance of the evidence. *Id.* The certified copies of the Drug Convictions satisfy the preponderance standard.

  As for the third and fourth prongs of the Rule 404(b) test, the court found that the government failed to meet the admissibility test as to the Possession Conviction, *i.e.*, the Possession Conviction is neither similar in kind nor close in time to the alleged offense, and its prejudicial effect is higher than its probative value. The Possession Conviction is not "close in time" to the alleged offense, because it occurred over six years before the instant alleged offense. It is not "similar in kind," because it occurred in Cook County,

---

[3] The court shall refer to distribution convictions at (1) and (2) as the "Delivery Convictions."

[4] The court shall refer to the possession conviction at (3) as the "Possession Conviction." It shall refer to the Delivery Convictions and the Possession Conviction collectively as the "Drug Convictions."

[5] The court shall refer to the aggravated unlawful use of a weapon conviction at (4) as the "Weapon Conviction."

9

Illinois, rather than in Iowa, and it is not a distribution conviction. *See United States v. Cook*, 454 F.3d 938, 941-42 (8th Cir. 2006) (affirming the district court's exclusion of the defendant's 1999 conviction for possession of marijuana in his trial for charges of possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime and possession of a firearm by a felon, and stating that "this mere possession offense was six years remote *and* it was *functionally* dissimilar to the charged distribution offense" (emphasis in original)). The court found that the dangers of jury confusion, unfair prejudice, waste of time and cumulative evidence outweighed the probative value of the evidence. *Id.* (affirming conclusion that the six-year-old possession of marijuana conviction had "very minimal probative value" that was "substantially outweighed by the danger of unfair prejudice").

On the other hand, the court found that the government met the third and fourth prongs of the Rule 404(b) test as to the Delivery Convictions. They are both "similar in kind and close in time to the crime[s] charged" and they are "higher in probative value than in prejudicial effect." *Lakoskey*, 462 F.3d at 980. "Evidence of similar drug activity is admissible in a drug prosecution case because a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged." *United States v. Jones*, 145 F.3d 959, 964 (8th Cir. 1998) (alterations and quotations omitted). The six-year time lapse between the Delivery Convictions and the instant alleged offense—August of 2006—did not render the convictions inadmissible. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (applying the reasonableness standard to determine if a crime was too remote in time to be admissible under Rule 404(b) and explaining that "'there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent'" (quoting *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995)); *see also United States v. Williams*, 340 F.3d 563, 569 (8th Cir. 2003) (explaining that a time lapse of over five years did not "weaken[] the prior

10

conviction's probative value"); *United States v. Green*, 151 F.3d 1111, 1114 (8th Cir. 1998) (citing cases where twelve, thirteen and seventeen years separated prior convictions from the charged offense, and the prior convictions were found to be admissible). The fact that the Delivery Convictions may have involved a different type of drug than the instant allegations[6] does not lessen the probative value of the bad acts evidence. *See Cook*, 454 F.3d at 941 ("A prior offense need not involve the same illegal drug as the charged offense."). The court finds that prong four of the Rule 404(b) test is met as to the Delivery Convictions.

Moreover, the Delivery Convictions survived an analysis under prong three of the Rule 404(b) test, that is, their probative value was not substantially outweighed by the dangers of confusion or prejudice. The fact that Defendant was convicted for drug deliveries in 2000 was admitted to show his intent, motive, knowledge and the absence of mistake or accident. The court gave the jury the model limiting instruction at the time the convictions came in as well as in the written instructions at the close of the case. *See United States v. Anwar*, 428 F.3d 1102, 1111 (8th Cir. 2005) ("Generally, a limiting instruction should be given to inform the jury of the narrow purpose for which evidence of other acts is admitted."); Eighth Circuit Model Criminal Jury Instruction 2.08 (2007).

There was no error committed in the admission of the Delivery Convictions as 404(b) evidence with a limiting instruction.

---

[6] Although Defendant submits that the drug underlying the Delivery Convictions was heroin, the certified statements of convictions the government attaches to the Resistance do not state with particularity the drug or drugs involved.

11

## VI. CONCLUSION

The court **DENIES** Defendant Cedric Jarreau Hawkins' Motion for New Trial and Motion for Judgment of Acquittal (docket no. 75).

**IT IS SO ORDERED.**

**DATED** this 18th day of October, 2007.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA